## Elizabeth M. Winegardner v. The Equitable Life Assurance Society of the United States.

### Gen. No. 11,514.

1.  INSURANCE POLICY—*when conflicting claims to, will not be adjudicated.* Where several parties each claim the ownership of, and the contingent benefits to accrue from, an insurance policy, one of them, a resident of this state, cannot maintain an action against the other, a non-resident, and without obtaining upon such other personal service, adjudicate finally as between themselves *and the insurance company* the question of the ownership of and the right to the benefits to arise from such insurance policy.

Bill for accounting. Appeal from the Superior Court of Cook County; the Hon. JESSE HOLDOM, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1903. Affirmed. Opinion filed February 10, 1905.

**Statement by the Court.** This is an appeal from a decree rendered in a suit brought by appellant in the Superior Court of Cook County, in which the primary relief sought was an accounting in respect to a contract made by appellant in 1880, with David H. McBriar of Columbus, Ohio, and Martha McBriar, his wife. The performance of this contract by appellant was secured by the assignment of a policy of insurance upon the life of her husband issued to appellant by appellee, the Equitable Life Assurance Society, and by its terms payable in the State of New York. The assured is still living and is made a nominal party to the bill.

The bill was filed October 21, 1902, about twenty-one years after the alleged breach of the contract by the McBriars. David H. McBriar died some months before the filing of the bill. His widow, Martha McBriar, and his son, A. H. McBriar, both of Columbus, Ohio, together with the unknown heirs and devisees of David H. McBriar, were made defendants to the suit and were notified of its pendency by publication.

Appellee demurred to the bill, the demurrer was sustained and the bill was dismissed as to appellee for want of equity. This appeal is prosecuted to reverse the decree.

The bill sets up that complainant is a resident of this state and is still the wife of William H. Winegardner; that she is the beneficiary in the policy of insurance which, upon the death of her husband, will be payable to her if she is then living and if not, to her children; that she and her son, Charles H. Winegardner, contracted in writing, July 28, 1880, to take from David McBriar and Martha McBriar five hundred head of sheep to be cared for during three years upon the terms "half the wool and half the increase of the flock." Complainant and her son were to shepherd and care for the sheep and pay the expenses out of the proceeds of their half and deliver to the McBriars one-half of the wool shorn from the flock and increase and one-half of what the lambs sold for, and at the end of three years to deliver to the McBriars said five hundred sheep and one-half of their living offspring, and if deaths occurred in the original number to replace the dead sheep by lambs from their own share. The profits of complainant and her son, less $50 per month for living expenses of the family, were to be applied on a note owing by her husband to Martha McBriar; that as indemnity to secure the McBriars only as to the flock and faithful handling of the same and accounting for the wool and the sale of lambs marketed, complainant agreed to assign to the McBriars the policy of insurance and to keep the premiums thereafter maturing upon the policy paid up; that the contract also provided that if any loss should occur in the handling and management of the flock for want of faithfulness on the part of complainant and her son, and there was not enough profits from their share to pay such loss, then the McBriars were to hold the policy until such loss was made up by complainant and her son, and then the McBriars were to deliver the policy to complainant.

The bill alleges that immediately after the making of the written contract appellee notified the parties thereto that the policy could not be assigned lawfully because it expressly provided in a notice endorsed thereon that "A wife cannot legally assign a policy drawn in her favor. A

husband cannot assign a policy to his wife;" that notwithstanding this notice by appellee, David McBriar demanded that the policy should be placed in his hands and complainant delivered the policy to him.

About a year after complainant and her son received the flock of sheep mentioned in the contract, they accounted to the owners of the flock for " one-half the wool and one-half the increase" to that time, and paid the proceeds of the clip and lambs marketed to A. H. McBriar, the son and agent of the owners of the flock, retaining the expenses of the agistors, which is claimed by the complainant not to have exceeded $50 a month, stipulated for the expenses of the family, and that immediately afterwards the McBriars violated the contract by repossessing themselves of the flock and the increase on hand, and left the complainant without the sheep and the increase, without compensation and without returning her policy of insurance; that complainant continued to pay all the premiums falling due on the policy from 1880 down to the filing of the bill, and that she is ready, able and willing to continue the payments, and that the McBriars have never been put to any expense on account of the policy; that Wm. H. Winegardner is upwards of seventy-three years of age and complainant is sixty-eight years of age and that in the ordinary course of life the liability of appellee will become fixed by the death of her husband either to complainant or to her children in case of her death and that appellee has informed her that it will not be able and will refuse to pay the policy after the death of her husband unless the original policy can be produced and surrendered to it, and that complainant will be unable to do so unless the McBriars surrender the same, and that the present value of the policy is greatly impaired and the same cannot now be used as an asset in dealing with the insurer and that she would suffer irreparable loss should her husband die before the facts stated in the bill can be ascertained in legal proceedings, and she would be deprived of his personal knowledge of the facts and his testimony; that David H. McBriar died some months

before the filing of the bill and left him surviving his widow, Martha McBriar, and one son, A. H. McBriar, and that complainant knows of no other heirs.

The prayer of the bill is that discovery be made of all the facts; that an account be stated and that William H. Winegardner's evidence be preserved of record as testimony *de bene esse;* that David McBriar and Martha McBriar be required to surrender the policy on payment to them by complainant of the amount found due by the court, and that appellee be enjoined to disallow the pretended claim of the McBriars to the policy, and that appellee be commanded and enjoined to deliver to the complainant a duplicate original policy of insurance, to be held as a muniment of title with the same effect and force as the original policy.

WILLIAM E. HUGHES and J. W. SUTTON, for appellant.

HOLT, WHEELER & SIDLEY, for appellee.

MR JUSTICE SMITH delivered the opinion of the court.

Viewing this bill as simply a bill between complainant and appellee without regard to complainant's equities against the McBriars, no one would say that complainant makes a case for equitable relief. Appellee has not by act or word given appellant the slightest ground of complaint. Appellee is standing by its contract, waiving no right, asking no favors. It has done nothing by which appellant has been misled or prejudiced, or can be prejudiced in the future. It is only, then, when we take into consideration the alleged rights of complainant against the McBriars, and the possession of the latter of the policy of life insurance assigned to them by complainant, with the future possibility that complainant may outlive her husband, and by his death have the right to demand of appellee payment of the policy, having first complied with certain conditions therein named, that any possible right to implead appellee as a defendant can be made to appear.

It would seem then, only just and equitable that if appellee is to be drawn into litigation and bound by a decree growing out of the equities between other parties, it should

be done where the court has complete jurisdiction over the real parties to the controversy and where the rights of all parties may be finally adjudicated. In other words, it would be grossly inequitable to appellee to compel it to submit to an adjudication in a case where it appears from the face of the bill the real parties litigant would not be bound by the decree, and would have a clear legal right to litigate the same questions in another suit wherever jurisdiction of the parties might be obtained.

The bill shows that the McBriars are residents of the State of Ohio, and that the only service that would be likely to be obtained upon them would be by publication. The record shows that was the only service. It appears from the bill that the policy of insurance in question is in the State of Ohio in the possession of the McBriars.

It was said in Cloyd v. Trotter, 118 Ill. 395: "It is so obvious it need not be stated, that persons residing or being without the limits of this state cannot be subjected to the jurisdiction of the local courts by the service of process upon them at the place of their domicile." And to the same effect is Pennoyer v. Neff, 95 U. S. 714.

Appellee is entitled as a matter of equity, to have the rights of all parties interested in the policy of insurance in question finally adjudicated, before a court of equity will enjoin it from allowing the claims of such parties. As to the duty of a court of equity to protect the interests before it in this regard there can be no doubt, for it is of the very essence of equity, and any omission thus to protect parties can only lead to vexatious litigation and injustice. Our Supreme Court, in Knopf v. Chicago Real Estate Board, 173 Ill. 198, has clearly expressed the rule of equity upon this subject.

The opinion of this court in Fahrig v. Milwaukee and Chicago Breweries, 113 Ill. App. 525, is in strict conformity with this general rule of equity. See also, Westcott v. Minnesota Mining Co., 23 Mich. 152.

If an accounting was had between appellant and the McBriars in this case and a decree rendered restraining

appellee from allowing the claim of the McBriars upon the policy of insurance in question, and commanding appellee to issue a duplicate policy to appellant, appellee would be placed in the position of having outstanding two original policies for the same insurance, with the claims of the Mc-Briars upon one policy unaffected by the decree, while as between appellant and appellee, appellant would have an adjudicated right to a policy for the same insurance, unencumbered with any equitable liens which the McBriars have upon the fund. Such a result is not consistent with justice or equity.

In our opinion the demurrer to the bill was well grounded, and the decree of the Superior Court must be affirmed.

*Affirmed.*